UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>vs.                                             )<br>)<br>HENRY COREY HAMLET          ) | Case No.  5:09-cr-00471-HGD |

## MEMORANDUM OPINION

The defendant, Henry Corey Hamlet, is charged with one count of simple assault pursuant to 18 U.S.C. § 113(a)(5), a Class B misdemeanor.  The Amended Information alleges that Hamlet assaulted Scott McElyea on Redstone Arsenal, by punching him with his fist.  On January 19, 2010, a non-jury trial was held at the United States Courthouse in Huntsville, Alabama.

**Trial Testimony**

The first witness called by the United States was Sarah Nell Thebus.  Ms. Thebus testified that on September 10, 2009, she was employed by Chugach, a company which provides grounds-keeping services by contract with Redstone Arsenal.  Prior to September 10, 2009, Hamlet and McElyea both worked for Chugach.  Hamlet was a crew leader over a work crew on which McElyea worked as a machine operator.  Ms. Thebus testified that she knew both men and "thought the

world" of both of them. Sometime prior to September 10, 2009, Hamlet's employment with Chugach terminated and he had not worked for the company for several weeks.

According to Ms. Thebus, she arrived at the parking lot utilized by Chugach employees sometime after 6:30 a.m. on September 10. When she arrived, while still inside her vehicle, she observed Hamlet pull his vehicle into a space beside her. She observed McElyea in another parking space, facing her vehicle.

Ms. Thebus testified that, immediately upon parking, Hamlet went directly over to McElyea's truck. Although she could not hear what was being said, she observed that the two men were engaged in a heated discussion. She noted that Hamlet was pointing his finger at McElyea and was obviously upset.

According to Ms. Thebus, Hamlet then swung his fist and struck McElyea in the chin. She then observed McElyea reach into his truck and pull out a knife which he brandished towards Hamlet. Ms. Thebus testified that, upon observing this, she exited her vehicle, got between Hamlet and McElyea, and began to push Hamlet back toward her automobile. She stated that Hamlet was still visibly upset and that he stated that "[t]his is the mother-f____r that cost me my job." At this point, Ms. Thebus testified that McElyea and Hamlet each got into their respective vehicles and Hamlet drove away.

Ted Billups testified that he had been working for Chugach on Redstone Arsenal for 15 years. He is the supervisor of grounds maintenance. Billups testified that, prior to his termination, Hamlet was a crew leader over the crew responsible for the care and maintenance of the test areas on Redstone Arsenal. As such, he was responsible for supervising a crew of eight or nine individuals. Scott McElyea was a tractor driver who worked on Hamlet's crew. Billups was the supervisor over Hamlet and his crew.

According to Billups, several weeks before September 10, 2009, Hamlet complained to Billups that he was having problems with certain crew members who were tractor drivers who were not helping with "weed-eating" when the crew members assigned this duty got behind. Billups testified that he took this matter up with McElyea and another crew member and advised them that they had to do what they were instructed to do by Hamlet.

While he was stating this to these two employees, Hamlet came over and began arguing with McElyea about the fact that Hamlet expected him to do this work despite the fact that he was a tractor driver. The discussion became heated, and Billups advised both McElyea and Hamlet to calm down and stop cussing or they would take the matter up with an assistant manager.

The arguing continued to a point where Hamlet threatened McElyea, stating that he would "kick his ass." Because making such a "verbal assault" was a violation of Chugach rules, Hamlet was terminated shortly thereafter. McElyea received a disciplinary write-up for his part in the altercation but was not fired because he did not make any threats.

Billups also testified that he was not a witness to the confrontation between Hamlet and McElyea on September 10, 2009. However, he states that, later in the day, McElyea came to him and requested that he be allowed to take the day off because he was so upset about having been hit in the chin by Hamlet.

Antonio White testified that on September 10, 2009, he was driving down Patton Road toward Redstone Arsenal where he worked. He testified that he observed Scott McElyea in a vehicle and Hamlet in another. He testified that he observed McElyea "flipping off" Hamlet and trying to run him off the road. White testified that, shortly thereafter, he arrived at the parking lot at Chugach where he was employed. He testified that he observed McElyea and Hamlet close together, talking to each other. However, he could not hear what was being said. When he observed these two men, he noticed that McElyea had a knife with a long blade in his hand pointed toward Hamlet. Hamlet was backing away from McElyea. According to White, when he first observed the two men in the parking lot, McElyea was in

possession of a knife. He testified that he did not see Hamlet strike McElyea. However, he was unable to testify as to what led up to this point because he was not looking toward them the entire time he was in the lot. He states that he observed Sarah Thebus between McElyea and Hamlet. According to White, she was talking to both of them and then walked to her car.

Freddrick Harper testified that he also works at Chugach. According to Harper, he observed Hamlet and McElyea get out of their respective vehicles and begin to argue with each other. Harper stated that he heard Hamlet state something to the effect that McElyea was not ever to "throw him the bird."

Harper stated that when he first observed McElyea, he did not have a knife in his hand but that he later observed one. When asked how McElyea obtained the knife, Harper stated that he did not know because he had looked away to pick up his lunch pail and, when he looked back, he observed McElyea with the weapon.

## Legal Analysis

Under 18 U.S.C. § 113(a)(5)

> Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:
>
> Simple assault, by a fine under this title or imprisonment for not more than six months, or both, or if the victim of the assault is an individual who has not attained the age of

>16 years, by fine under this title or imprisonment for not more than 1 year, or both.

18 U.S.C. § 113(a)(5).

The statute does not define "assault"; therefore, we define the term in accordance with its meaning at common law. *United States v. Williams*, 197 F.3d 1091, 1096 (11th Cir. 1999); *United States v. Guilbert*, 692 F.2d 1340, 1343 (11th Cir. 1982). Simple assault at common law is defined as "a willful attempt to inflict injury upon the person of another, or . . . a threat to inflict injury upon the person of another which, when coupled with an apparent present ability [to do so], causes a reasonable apprehension of immediate bodily harm." *United States v. Fallen*, 256 F.3d 1082, 1088 (11th Cir. 2001) (quotation and citation omitted).

Put another way,

>At common law, "assault" had two meanings, one being criminal assault, which is an attempt to commit a battery, and the other being tortious assault, which is an act that puts another in reasonable apprehension of immediate bodily harm. *United States v. Dupree*, 544 F.2d 1050, 1051 (9th Cir. 1976). Both meanings are embraced within the term "assault" as used in 18 U.S.C. § 113. *Id.*; *United States v. Bell*, 505 F.2d at 540-41. Furthermore, where the assault is of the first type, *i.e.*, an attempted battery, the victim need not have experienced reasonable apprehension of immediate bodily harm, and the fact that the battery is actually committed does not result in a merger therein of the assault; proof of a battery supports a conviction for assault. *United States v. Dupree*, 544 F.2d at 1052.

*United States v. Guilbert*, 692 F.2d at 1343.

The most cogent testimony regarding the events of September 10, 2009, was presented by Sarah Thebus.  She knew both parties, liked both of them, was the closest witness to the actual event, and had no reason to embellish or color her testimony toward one party or the other.  The court finds her testimony to be highly credible.  Other witnesses either did not see the incident at all or only saw part of it.

It is clear from the testimony that McElyea did not obtain the knife from his vehicle until after he had been attacked by the defendant.  While he may have been involved in antagonizing the defendant on the road leading up to Redstone Arsenal, it does not justify a physical assault on McElyea.  Hamlet could have and should have reported the incident to McElyea's employer or his own[1] and allowed the matter to be handled by these other persons.  Instead, he chose to take matters into his own hands.

Based on the evidence presented, the court finds the defendant, Henry Corey Hamlet, **GUILTY** of simple assault, in violation of 18 U.S.C. § 113(a)(5), as charged in the Information.

---

[1] Trial testimony reflected that Hamlet was employed at the Post Exchange on Redstone Arsenal at the time of the incident.

Before sentencing, the court wishes to have the benefit of a pre-sentence report. Therefore, the United States Probation Office is INSTRUCTED to prepare a pre-sentence report.  **This matter is SET for formal entry of judgment and sentencing on March 24, 2010, at 10:00 a.m. at the United States Courthouse in Huntsville, Alabama.**

DONE this 29th day of January, 2010.

_____
HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE